UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| IN RE: METHOD OF PROCESSING ETHANOL BYPRODUCTS AND RELATED SUBSYSTEMS ('858) PATENT LITIGATION | ) ) ) ) )   No. 1:10-ml-02181-LJM-DML |
| RELATED CASE: | ) ) ) |
| 1:10-cv-08011-LJM-DML | ) |

**ORDER ON DEFENDANT ADKINS ENERGY LLC'S
MOTION FOR JUDGMENT ON THE PLEADINGS OR,
IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT**

Defendant Adkins Energy, LLC ("Adkins") has moved for a judgment on the pleadings or, in the alternative, for partial summary judgment on the issue of liability for breach of contract, and for partial summary judgment on one part of Adkins' damages caused by the breach. Dkt. Nos. 103/39.[1] Plaintiff GS CleanTech Corporation ("CleanTech") opposes the Motion. The Court rules as follows.

## I. BACKGROUND

In July 2006, Veridium Industrial Design Group ("VIDG"), a predecessor-in-interest and corporate alias of CleanTech, entered into a written agreement with Adkins entitled "Equipment License and Corn Oil Off-Take Agreement" ("Agreement"). Dkt. No. 20, ¶ 14. In relevant part, the Agreement gives Adkins the right to rent at its Lena facility a corn oil extraction system developed and owned by CleanTech and a license to CleanTech's related intellectual property. Dkt. No. 12, Ex. A, at 1. The Agreement states that CleanTech agreed to complete installation of the system no later than 270

---

[1] Except in the Conclusion, hereinafter, the Court will refer to pleadings in Case No. 1:10-cv-08011-LJM-DML, only.

days from its receipt from Adkins of the "written consent of appropriate federal and state environmental agencies and authorities."  *Id.* at 4.  Further, CleanTech agreed to provide Adkins with all the equipment or other components necessary for Adkins to use the system at the Lena facility.  *Id.*

The corn oil extraction system and all the ancillary equipment and components would be the property of CleanTech, until Adkins purchased the system as provided in the Agreement.  *Id.* at 6.  Specifically, Adkins was given a first right of refusal to purchase the corn oil extraction system from CleanTech 180 days "from the Installation of the [corn oil extraction system]", where "Installation" was defined as "the final delivery and installation of all equipment essential to the proper function of the [corn oil extraction system] within the Facility and the initiation of production of the corn oil from the [corn oil extraction system]."  *Id.* at 1-2.

In exchange for granting Adkins the right to use the corn oil extraction system as well as the related intellectual property, the Agreement gives CleanTech the first right of refusal to purchase corn oil extracted through the use of the system at a reduced rate.  *Id.* at 1, 2-4.

With respect to CleanTech's intellectual property, the Agreement states:

> Under the terms and conditions hereof, and except as otherwise limited herein, [CleanTech] hereby grants to Adkins a perpetual, royalty-free non-exclusive license for the use by Adkins of the [corn oil extraction system] and [CleanTech's] related intellectual property rights (the "Intellectual Property Rights") at the Facility (the "License").  The grant of this License shall be expressly limited to the use of the [corn oil extraction system] at the Facility and for no other purpose and at no other location.  Notwithstanding the foregoing, such license shall terminate upon the expiration or termination of this Agreement if Adkins has not exercised its right to purchase the [corn oil extraction system].

*Id.* at 1.

Another provision limits Adkins' available claims against CleanTech. The Agreement states that Adkins "waives any claims against [CleanTech] and releases [CleanTech] from liability to Adkins, for any indirect, special, punitive, incidental, or consequential damages whatsoever (except for actual out-of-pocket expenses incurred as a result of [CleanTech's] breach) based upon … breach of contract …:" *Id.* at 8. The limitation on liability expressly excludes, among other things, loss of use of the corn oil extraction system, claims of third parties and injury to property. *Id.* at 9.

During 2006, VIDG/CleanTech developed drawings and plans for the installation of a corn oil extraction system at Adkins' Lena, Illinois, facility around late 2006 or early 2007. Dkt. No. 20, ¶ 18. VIDG/CleanTech hired a contractor, Harn Construction Co. ("Harn"), to perform construction work for installation of the corn oil extraction system. *Id.* ¶ 19.

On September 7, 2007, Harn placed liens on Adkins' Lena facility and any money or other consideration owed to CleanTech in the amounts of two purchase orders CleanTech entered into with Harn. Dkt. Nos. 104-3 & 104-4. CleanTech was informed that Harn had placed the liens and that Harn had raised payment concerns. Dkt. No. 20, ¶ 20, ANSWER. Adkins requested that CleanTech obtain a release of the liens. *Id.* ¶ 21, ANSWER. CleanTech admits that it "did not make any direct monetary payment to Harn [] and other subcontractors to satisfy the lien." *Id.* ¶ 22, ANSWER.

Further, CleanTech admits that it never completed installation of the corn oil extraction system at Adkins' Lena facility. *Id.* ¶ 23, ANSWER.

On February 1, 2008, Harn's President made an "Assignment" transferring certain "right, title and interest" of the two purchase orders referenced in the liens to

3

Adkins (the "Assignment").  Dkt. No. 12, Ex. B.  The purchase orders list "GS Ethanol Technologies, Inc." with an address in Georgia at the top, Harn as the "Vendor" and "Adkins Energy" in Lena, Illinois as the "Ship To" location.  *Id.*

Purchase order number 6012002 ("P.O. No. 6012002"), dated February 5, 2007, is for "Process Building Addition for Extraction Equipment per quote from Joel D. Manus, dated September 12, 2006, option B," for a total amount of $67,200.00.  *Id.*  A handwritten note on P.O. No. 6012002 states, "To replace PO# 0972 issued by Warnecke Design Services."  *Id.*  There are no other terms or substantive information on P.O. No. 6012002.  *Id.*

Purchase order number 6012006 ("P.O. No. 6012006"), dated March 12, 2007, is for "Tank Farm Foundations for Storage Tanks," for a total amount of "68,340.00."  *Id.*  This purchase order states "Terms are net 30 upon completion."  *Id.*  There are no other terms or substantive information on P.O. No. 6012006.  *Id.*

Adkins alleges that CleanTech breached the Agreement when it failed to pay for the liens on Adkins' property and when it failed to complete installation of a corn oil extraction system at Adkins' Lena facility.  Dkt. No. 20 ¶¶ 21-24, 26.  The parties agree that Adkins terminated the Agreement, most likely in November 2007.  *Id.* ¶ 26 & ANSWER thereto.  Adkins further alleges that CleanTech expressly agreed at the time Adkins terminated the Agreement that CleanTech would not sue Adkins if Adkins obtained alternative technology to extract corn oil at its facility.  *Id.* ¶ 27.  Adkins also alleges that it incurred damages, including the cost of paying off the liens on the Lena facility, purchasing other corn oil extraction technology and related equipment, and defending against CleanTech's allegations of infringement.  *Id.* ¶¶ 24, 28, 29 & 30.

CleanTech denies that it breached the Agreement and that denies that it made any express agreement not to sue Adkins.  *Id.* ¶¶ 23 & ANSWER; 24, ANSWER; 26, ANSWER; 28, ANSWER; 29, ANSWER & 30, ANSWER.  CleanTech also denies that Adkins suffered any damages from any alleged breach.  *Id.* ¶¶ 24, ANSWER; 28, ANSWER; 29, ANSWER; & 30, ANSWER.

## II. **STANDARD**

Adkins presents its motion in the alternative: either one under Rule 12(c) of the Federal Rules of Civil Procedure ("Rule 12(c)"), in which case the Court may not consider matters outside the pleadings, Fed. R. Civ. P. 12(c), or one under Rule 12(d) or Rule 56, in which case the Court may consider matters outside the pleadings.

The Court decides motions brought under Rule 12(c) by the same standard as that for a motion to dismiss for failure to state a claim under Rule 12(b)(6).  *See R.J. Corman Derailment Servs., LLC v. Int'l Union of Operating Eng'rs*, 335 F.3d 643, 647 (7th Cir. 2003).  The Court may consider only the pleadings and must view the allegations in the light most favorable to the non-moving party.  *See id.*  The pleadings include the complaint, the answer, and any documents attached thereto as exhibits.  *See N. Ind. Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 452-53 (7th Cir. 1998); *Wright v. Assoc'd. Ins. Cos.*, 29 F.3d 1244, 1248 (7th Cir. 1994) (stating that "documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim").  The Court may also take judicial notice of matters of public record and not subject to reasonable dispute.  *See Ennenga v. Starns*, 677 F.3d 766, 773-74 (7th Cir. 2012) (citations omitted).

When the plaintiff is the moving party, "the motion should not be granted unless it appears beyond doubt that the non-moving party cannot prove facts sufficient to support [its] position." *All Am. Ins. Co. v. Broeren Russo Const., Inc.*, 112 F. Supp. 2d 723, 728 (C.D. Ill. 2000). Furthermore, "[a] judgment on the pleadings is proper when only questions of law, and not questions of fact, exist after the pleadings have been filed." *Id.* More generally, then, the Court will presume the facts as alleged by CleanTech to be true, but it is not bound by CleanTech's legal characterization of facts. *See Nat'l Fidelity Life Ins. Co. v. Karaganis*, 811 F.2d 357, 358 (7th Cir. 1987).

### III. DISCUSSION

To succeed on its breach of contract claim under Illinois law, Adkins must prove (1) the existence of a valid and enforceable contract; (2) substantial performance by Adkins; (3) a breach by CleanTech; and (4) resultant damages. *TAS Distrib. Co. v. Cummins Engine Co.*, 491 F.3d 625, 631 (7th Cir. 2007). Although CleanTech admits that it failed to install a corn oil extraction system at Adkins' Lena facility, the terms of the Agreement required Adkins to obtain the necessary permits before CleanTech was required to construct the system. Dkt. No. 12, Ex. A, at 4. There is no evidence in the pleadings that Adkins had obtained the requisite permits and the Court is not inclined to infer this condition precedent from the other facts that are established by the pleadings.[2] As a result, Adkins has not established its substantial performance under the

---

[2] Even if the Court considered evidenced outside of the pleadings, there is still a question of Adkins' complete performance under the Agreement since there is no mention of completion of this condition precedent, only that Adkins allowed CleanTech and its contractors complete access to Adkins' Lena facility. *See* Dkt. Nos. 20, ¶ 18 & 104-1 (Declaration of Raymond E. Baker) (authenticating the Agreement and discussing the facts surrounding placement and payment of the liens).

6

Agreement or that CleanTech breached its terms. Therefore, Adkins' Motion must be **DENIED**.

### III. CONCLUSION

For the reasons stated herein, the Court **DENIES** Adkins Energy, LLC's Motion for Judgment on the Pleadings or, in the Alternative, for Partial Summary Judgment on the Issue of Liability for Breach of Contract, and for Partial Summary Judgment on One Part of Adkins' Damages (Dkt. Nos. 103/39).

IT IS SO ORDERED this 19th day of November, 2012.

_____
LARRY J. McKINNEY, JUDGE
United States District Court
Southern District of Indiana

Electronically distributed to all registered attorneys of record via CM/ECF.